Mel C. Orchard, III (Bar #26068)
Emily S. Madden (Bar #25716)
THE SPENCE LAW FIRM LLC
15 S. Jackson Street / P.O. Box 548
Jackson, Wyoming 83001
orchard@spencelawyers.com
madden@spencelawyers.com
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| JOHN SANT, and JAN SANT,     ) | |
|     ) | |
|     Plaintiffs,     ) | |
|     ) | Civil Action No. _____ |
|     vs.     ) | |
|     ) | |
| MARRIOTT INTERNATIONAL, INC.,     ) | |
| *a for-profit corporation*, and JUHU     ) | |
| BEACH RESORTS LTD., *a foreign*     ) | |
| *foreign corporation*,     ) | |
|     ) | |
|     Defendants.     ) | |
| _____     ) | |

## COMPLAINT

Plaintiffs John Sant and Jan Sant, by and through undersigned counsel, Mel C. Orchard III and Emily S. Madden of THE SPENCE LAW FIRM LLC, hereby plead and allege their causes of action against Defendants as follows:

## I.    THE PARTIES

**Plaintiffs**

1.    Plaintiff, John Sant, is a United States citizen who is and was at all relevant times residing and domiciled in Florida.

2.    Plaintiff John Sant is and was at all material times a commercial airline pilot.

3.    Plaintiff John Sant travels frequently, domestic and abroad, because of his job.

4.     When Plaintiff John Sant travels, he prefers to stay at well-established hotels, including Marriott hotels.

5.     Plaintiff John Sant is and was at all relevant times "Marriott Bonvoy Titanium Elite" member of Defendant Marriott International Inc.'s Marriott Bonvoy Rewards Program.

6.     Plaintiff Jan Sant is and was at all relevant times a United States citizen residing and domiciled in Florida.

7.     Plaintiffs John and Jan Sant are and were at all relevant times married.

**Defendant Marriott International, Inc.**

8.     Defendant Marriott International, Inc. is a private, for-profit corporation registered in Delaware with its principal place of business located in Bethesda, Maryland.

9.      Defendant Marriott International, Inc. is a worldwide operator, franchisor, and licensor of hotel, residential, and timeshare properties under numerous brand names.

10.     Defendant Marriott International Inc. is the largest hotel chain in the world by the number of available rooms.

11.     Defendant Marriott International Inc. has 30 brands with 7,000+ properties containing roughly 1.4 million rooms in 131 countries and territories.

12.     Nevertheless, Defendant Marriott International, Inc. focuses on management, franchising, and licensing.

13.     Consistent with Defendant Marriott International, Inc.'s focus on management, franchising, and licensing, it owns very few of its lodging properties, and instead relies on franchising or licensing agreements with other property owners.

14.     Marriott Bonvoy is Defendant Marriott International Inc.'s customer loyalty program through which members have access to Defendant Marriott International Inc.'s diverse brand portfolio, including franchised or licensed properties.

15.     Defendant Marriott International Inc. uses its Marriott Bonvoy customer loyalty program because it believes it generates substantial repeat business.

16.     Defendant Marriott International Inc. services Marriott.com, an international website that allows customers to book reservations and enroll in Defendant Marriott International Inc.'s Marriott Bonvoy customer loyalty program.

17.     Defendant Marriott International Inc. also has approximately twenty hotel reservation centers, seven in the United States and thirteen in other countries and territories, which handle reservation requests for Defendant Marriott International Inc.'s lodging brands worldwide, including franchised or licensed properties.

18.     Defendant Marriott International Inc.'s franchising and licensing arrangements permit hotel owners and operators to use its lodging brand names and systems.

19.     Under Defendant Marriott International Inc.'s hotel franchising and licensing arrangements, the hotel owners or operators can use its lodging brand names and systems, such as the Marriott Bonvoy customer loyalty system; its reservation systems including Marriott.com or its reservation centers; as well as its marketing strategies and materials.

20.     Defendant Marriott International, Inc. refers to properties bearing its brands, including those properties that are licensed or franchised, collectively as "Marriott Hotels, Resorts, and Suites" (MHRSs"), which together compromise what it calls the "Marriott System."

21.     In its 2021 Annual Report, Defendant Marriott International Inc. referred itself together with its subsidiaries as "we," "us," "Marriott," or the "Company.

22.     Defendant Marriott International Inc. requires all of its brand hotels and franchised or licensed properties to adhere to a uniform prototype

23.     Creating a uniform experience across the Marriott System enhances Defendant Marriott International, Inc.'s profits.

24.     In pursuit of this goal, Defendant Marriott International, Inc. retains and exercise a pervasive right of control over aspects of MHRSs, regardless of whether a particular location is company-owned or franchised.

25.     Defendant Marriott International Inc. retains and exercises a pervasive right of control in that it monitors and dictates almost all essential aspects of the operation of its brand names and the properties that bear it, including franchised or licensed properties. This control includes but is but not limited to customer service, decor, safety, insurance, marketing and sales, and other essential elements of the customer experience.

26.     Defendant Marriott International, Inc.'s tools of control include but are not limited to:

      a.     Its franchise and/or licensing agreements;

      b.     Its Hotel Design Guide;

      c.     Standard Operating Procedures regulating virtually every aspect of hotel operation;

      d.     Scheduled and unannounced inspections pursuant to the Marriott Quality Assurance Program;

      e.     Standardized inspection checklists;

      f.     A centralized training program for MHRS managers; and/or

      g.     Other tools by which Marriott seeks to and ultimately does exercise a pervasive right of control in order to enforce a uniform system.

27.     Defendant Marriott International, Inc. strives to conceal from its guests whether they are patronizing a company-owned location or a franchised location.

28.     Defendant Marriott International, Inc. is aware that many of its patrons trust the Marriott brand, and that this trust would be eroded if its patrons were aware that a particular facility was owned and/or operated by a separate company or companies.

29.     Defendant Marriott International, Inc. cultivates the appearance of common ownership across the Marriott System by measures including but not limited to:

a.      extensively displaying its name and marks on signage, uniforms, business cards, carpets, towels, and other physical items;

b.      prohibiting franchisees and operators from displaying their own names and marks;

c.      failing to differentiate Marriott owned and operated locations from franchised locations on its website and internet reservation system;

d.      maintaining a common system of rewards membership and points across the Marriott System;

e.      causing guests to search for and book lodging at all properties through the centralized Marriott websites, Marriott.com;

f.      answering phone calls with the Marriott name and causing guests to interface with a centralized Marriott call center for reservations and other guest services; and/or

g.      many other design, safety, and hotel industry requirements that are controlled, enforced, and standardized by Defendant Marriott International Inc.

**Defendant Juhu Beach Resorts Ltd.**

30.     Defendant Juhu Beach Resorts Ltd. is a special purpose, publicly incorporated and non-government company incorporated or otherwise structured under the laws of India.

31.     Defendant Juhu Beach Resorts Ltd. is registered at Registrar of Companies, Mumbai.

32.     Defendant Juhu Beach Resorts Private Ltd. was formed and was at all material times controlled or managed by the Raheja Group and Mecca Properties Development Private Ltd. of India.

33.     Defendant Juhu Beach Resorts Ltd. has its registered address as the JW Marriott Hotel on Juhu Tara Road in Mumbai, India.

## II.     JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this suit is between citizens of different states or subjects of a foreign state, and the amount in controversy for this matter exceeds $75,000.00, exclusive of interests and costs.

35.     This Court has personal jurisdiction over Defendant Marriott International Inc. because it is a corporation with its principal place of business in Maryland. This Court also has general jurisdiction over Defendant Marriott International, Inc. because it is essentially "at home" in this State.

36.     This Court has specific personal jurisdiction over Defendant Juhu Beach Resorts Ltd. because of Defendant Juhu Beach Resorts Ltd.'s purposeful availment of the forum state, Maryland, by entering a contractual relationship with defendant Marriott International Inc. that is centered in Maryland.

37.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Defendant Marriott International Inc. has its principal place of business in Maryland, and both Defendant Marriott International Inc. and Defendant Juhu Beach Resorts Ltd. are subject to the Court's personal jurisdiction with respect to this action.

## III.     GENERAL STATEMENT OF FACTS

**The JW Marriott Mumbai Juhu Hotel in Mumbai, India**

38.     Defendant Marriott International Inc.'s brand portfolio is grouped into three quality tiers: luxury, premium, and select.

39.     JW Marriott is one of Defendant Marriott International's luxury hotel brands.

40.     Under the JW Marriott brand, there are at least 100 hotels and resorts throughout the United States, Europe, the Middle East, Africa, Asia, and the Caribbean.

41.     The JW Marriott Mumbai Juhu is located in Mumbai, India.

42.     The JW Marriott Mumbai Juhu is part of Defendant Marriott International Inc.'s JW Marriott luxury brand.

43.     Defendant Juhu Beach Resorts Ltd. owns and/or operates the JW Marriott Mumbai Juhu hotel in Mumbai, India.

44.     Upon information and belief, Defendant Juhu Beach Resorts Ltd. owns and/or operates the JW Marriott Mumbai Juhu hotel via a franchise or licensing arrangement or agreement with Defendant Marriott International, Inc.

45.     Pursuant to the licensing or franchising agreement between Defendant Juhu Beach Resorts Ltd. and Defendant Marriott International, Inc., the JW Marriott Mumbai Juhu is and was at all material times subjected to Defendant Marriott International Inc.'s pervasive right and exercise of control over all aspects of the hotel and resort.

46.     The website for the JW Marriott Mumbai Juhu is an extension of Marriott.com, Defendant Marriott International Inc.'s international website.

47.     In the upper-right hand corner of the JW Marriott Mumbai Juhu's website extension is signage for another website extension for the Marriott Bonvoy loyalty customer program.

48.     From the upper-left hand corner of the JW Marriott Mumbai Juhu website extension is a drop-down menu where a patron can select a number of other extensions, including "Careers at Marriott" and "Our Brands."

49.     Defendant Marriott International Inc. refers to the JW Marriott Mumbai Juhu as its hotel on the Marriott.com website by using phraseology such as "our hotel" or "our luxury accommodations."

**Plaintiff John Sant's stay at the JW Marriott Mumbai Juhu Hotel**

50.     Plaintiff stayed at the JW Marriott Mumbai Juhu hotel because of his experience and preference for Marriott hotels and as a member of the Marriott Bonvoy loyalty rewards program.

51.     At no point in time was Plaintiff John Sant aware that JW Marriott Mumbai Juhu was owned and/or operated by an entity other than Defendant Marriott International Inc.

52.     At no point in time was Plaintiff John Sant aware that JW Marriott Mumbai Juhu was owned and/or operated by virtue of a franchising or licensing agreement between Defendant Juhu Beach Resorts Ltd. and Defendant Marriott International, Inc.

**Plaintiff's Fall**

53.     In September 2020, Plaintiff John Sant was staying at the JW Marriott Mumbai Juhu hotel for a routine layover as a commercial airline pilot for United Airlines.

54.     On September 28, 2020, Plaintiff John Sant was set to depart from the JW Marriott Mumbai Juhu hotel and head to the airport with his United Airlines coworkers.

55.     Plaintiff and his coworkers had arrangements through the hotel to have a Marriott van transport them from the hotel to the airport.

56.     In the evening of September 28, 2020, Plaintiff John Sant was in the exterior lobby of the JW Marriott Mumbai Juhu hotel waiting to be picked up by a Marriott transport van.

57.     The exterior lobby is constructed out of dark, black marble.

58.     The particular Marriott transport van was driven by an employee named Rasesh.

59.     Upon information and belief, Rasesh was working in the course and scope of his employment for the JW Marriott Mumbai Juhu hotel.

60.     Rasesh drove the Marriott van into the hotel's driveway adjacent to the exterior lobby.

61.     The van arrived around 9:50 p.m.

62.     The driveway is constructed from the same dark, black marble as the exterior lobby.

63.     The exterior lobby blended completely into the driveway because of the lack of color contrast and the poor lighting in the vicinity.

64.     It appeared as though the exterior and the driveway were one, continuous level.

65.     The driveway was actually lower than the exterior lobby, and patrons, including Plaintiff, were forced to proceed to the driveway via an unmarked, invisible, and dangerous drop-off.

66.     The different elevation between the driveway and the lobby is so difficult to discern that the hotel had placed reflective tape and/or reflectors on the pavers lining the driveway to warn vehicles, such as the Marriott van, of the difference in elevation.

67.     No reflective tape or similar signs or warnings were posted to warn guests of the hidden drop-off.

68.     When the Marriott van arrived, Plaintiff John Sant walked from the exterior lobby to the driveway.

69.     The lack of differentiation between the driveway and the lobby, coupled with the lack of warning signs and adequate lighting, caused Plaintiff John Sant to encounter the unexpected, abrupt, and extremely dangerous vertical drop.

70.     When Plaintiff encountered the vertical drop, he fell.

71.     Plaintiff tumbled forward, crumpled against the Marriott transport van, and fell backward against his colleague's legs.

72.     Plaintiff was in immediate and excruciating pain, particularly in his right leg and ankle.

73.     Plaintiff's colleague described the sound of Plaintiff's fall as consistent with a breaking bone or torn ligament.

74.     Rasesh apologized to Plaintiff John Sant.

75.     Plaintiff received some emergent medical services at the Mumbai airport, but the services available were inadequate for his injury.

76.     Plaintiff was incapable of piloting the flight back to the United States.

77.     When Plaintiff John Sant returned to the United States, he began and has continued to receive medical treatment for his injuries which include, *inter alia*, a fibular avulsion fracture and torn ligaments and tendons requiring multiple surgeries and resulting in permanent and debilitating nerve damage. Additionally, Plaintiff developed cervical radiculopathy, spondylosis, anterior and lateral compartment syndrome, and complex regional pain syndrome.

78.     Plaintiff John Sant's injuries, specifically including but not limited to his complex regional pain syndrome, jeopardizes his medical clearance and certification required to work as a commercial airline pilot.

79.     Plaintiff John Sant suffered and has continued to suffer serious injuries as a result of this incident that are more fully discussed in the "Damages" section of this Complaint and for which Defendants are liable.

80.     Plaintiff Jan Sant suffered and has continued to suffer serious injuries as a result of this incident that are more fully discussed in the "Damages" section of this Complaint and for which Defendants are liable.

**Relationship between the Defendants**

81.     As legal entities, Defendants can act only through their officers, directors, members, managers, employees, and agents.

82.     Defendants are vicariously liable for the conduct of those acting on their behalf within the scope of their duties or agency.

83.     Upon information and belief, Defendant Juhu Beach Resorts, Ltd. entered into a Franchise or Licensing Agreement with Defendant Marriott International, Inc., for the ownership and/or operation of the JW Marriott Mumbai Juhu hotel in Mumbai, India.

84.     Upon information and belief, the Franchise or Licensing Agreement gave Defendant Marriott International, Inc. a pervasive right to control all aspects of hotel operations.

85.     Upon information and belief, Defendant Marriott International, Inc. required Defendant Juhu Beach Resorts, Ltd. to follow a detailed set of mandatory Standard Operating Procedures that regulated all aspects of Defendant Juhu Beach Resorts, Ltd.'s business with respect to the ownership and/or operation of the JW Marriott Mumbai Juhu hotel.

86.      Upon information and belief, Defendant Marriott International, Inc. required managers at the JW Marriott Mumbai Juhu hotel to attend a Marriott Training Program.

87.     Upon information and belief, Defendant Marriott International, Inc. reserved the right to conduct both scheduled and unannounced inspections of the JW Marriott Mumbai Juhu hotel to determine whether the facility was up to Marriott's standards, and to require Defendant Juhu Beach Resorts, Ltd. to perform repairs and maintenance according to Marriott's orders.

88.     Upon information and belief, Defendant Marriott International Inc. did in fact inspect the JW Marriott Mumbai Juhu hotel on a regular basis.

89.     Defendant Marriott International, Inc. and/or Defendant Juhu Beach Resorts, Ltd. had control over the exterior lobby.

90.     Defendant Marriott International, Inc. and/or Defendant Juhu Beach Resorts, Ltd. had control over the driveway.

91.     Defendant Marriott International, Inc. and/or Defendant Juhu Beach Resorts, Ltd. had control over signage or warnings to patrons or guests regarding unsafe and hidden conditions on the property.

92.     Defendants did nothing to inform patrons that Defendant Juhu Beach Resorts, Ltd. owned and/or operated the JW Marriott Mumbai Juhu hotel.

93.     Defendants did nothing to inform patrons of the franchise or licensing relationship between Defendants.

94.     On the contrary, Defendants actively obscured their relationship from patrons to avoid jeopardizing the appearance of uniformity across the Marriott System.

95.     Upon information and belief, Defendants shared in their profits and losses.

## IV.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION: PREMISES LIABILITY
***Directly against Defendant Juhu Beach Resorts, Ltd.***
***Vicariously against Defendant Marriott International, Inc.***

96.     At all material times, Defendant Juhu Beach Resorts, Ltd. was a premises owner who opened its premises, the JW Marriott Mumbai Juhu hotel, to the public for business.

97.     At all relevant times, Defendant Juhu Beach Resorts, Ltd. and/or Defendant Marriott International Inc. was required to use reasonable care in the supervision, maintenance, or control of the JW Marriott Mumbai Juhu hotel.

98.     At all material times, Plaintiff John Sant was an "invitee" while on the JW Marriott Mumbai Juhu's premises.

99.     At all relevant times, Defendant Juhu Beach Resorts, Ltd. knew or, by the exercise of reasonable care would have discovered, the dangers posed by the dangerous condition of the exterior lobby/driveway drop-off.

100.    At all relevant times, Defendant Juhu Beach Resorts, Ltd. knew or should have known that the exterior lobby/driveway drop-off involved an unreasonable risk of harm to its guests or patrons, including Plaintiff.

101.    At all relevant times, Defendant Juhu Beach Resorts, Ltd. knew or should have known that guests or patrons, including Plaintiff, would not discover or realize the danger, or would fail to protect themselves against it.

102.    At all relevant times, Defendant Juhu Beach Resorts, Ltd. failed to exercise reasonable care to protect guests or patrons, including Plaintiff, from the dangerous condition, in the following ways:

   a.   Negligently failing to inspect the exterior lobby/driveway area;
   b.   Negligently failing to maintain the exterior lobby/driveway area;
   c.   Negligently failing to discover the danger posed by the drop-off;
   d.   Negligently to remedy the danger posed by the drop-off;
   e.   Negligently failing to warn or protected patrons and guests of the danger posed by the drop-off;
   f.   Negligently failing to adhere to the design, safety, and hotel industry standards and requirements that are standard in the hotel industry; and/or
   g.   Otherwise negligently failing to act reasonably under the circumstances.

103.    Defendant Juhu Beach Resorts, Inc.'s culpable acts or omissions directly and proximately caused Plaintiffs' injuries which are more fully described in the "Damages" section of this Complaint.

104.    Defendant Juhu Beach Resorts, Ltd. is directly liable for its culpable acts and omissions.

105.    Defendant Marriott International, Inc.'s pervasive right of control over the premises pursuant to the franchise or licensing arrangement renders Defendant Marriott International Inc. vicariously liable for Defendant Juhu Beach Resorts, Ltd.'s acts and/or omissions.

106.    In the alternative, Defendants were partners in that they carried on as co-owners of a business for profit, and they are therefore jointly and severally liable for each other's culpable conduct.

107.    In the alternative, Defendants were operating in the course and scope of a joint enterprise or joint venture and are therefore jointly and severally liable for each other's culpable conduct.

**SECOND CAUSE OF ACTION: NEGLIGENCE**
***Brought in the alternative to Plaintiff's First Cause of Action***
***Directly against Defendant Juhu Beach Resorts, Ltd.***
***Vicariously against Defendant Marriott International, Inc***

108.    In the event Defendant Juhu Beach Resorts, Ltd. is not the premises owner of the JW Marriott Mumbai Juhu hotel, Defendant Juhu Beach Resorts, Ltd. is liable for negligence.

109.    At all material times, Defendant Juhu Beach Resorts, Ltd. was an "innkeeper" who opened the JW Marriott Mumbai Juhu hotel to guests and patrons for business purposes.

110.    At all material times, Defendant Juhu Beach Resorts, Ltd. had a special relationship with patrons or guests, including Plaintiff.

111.    This special relationship gave rise to a duty to exercise reasonable care for the safety of its guests or patrons.

112.    Defendant Juhu Beach Resorts, Ltd. breached its duty of care through the following acts and omissions:

    a.  Negligently failing to adequately inspect the exterior lobby/driveway area;

    b.  Negligently failing to maintain the exterior lobby/driveway area;

    c.  Negligently failing to discover the danger posed by the drop-off;

    d.  Negligently to remedy the danger posed by the drop-off;

    e.  Negligently failing to warn patrons and guests of the danger posed by the drop-off;

    f.  Negligently failing to protect patrons and guests of the danger posed by the drop-off;

    g.  Negligently failing to ensure compliance with the Marriott Standard Operating Procedures;

    h.  Negligently failing to ensure compliance with the Marriott Quality Assurance Program;

    i.  Negligently failing to ensure compliance with the Marriott Hotel Design Guide;

    j.  Negligently failing to ensure compliance with the Marriott Standardized Inspection Checklists;

    k.  Negligently failing to ensure compliance with the Centralized Training Program;

    l.  Negligently failing to exercise control over the area in question pursuant to the franchise or licensing arrangement;

    m.  Negligently failing to adhere to the design, safety, and hotel industry standards; and/or

    n.  Otherwise negligently failing to act reasonably under the circumstances.

113.    Defendant Juhu Beach Resorts, Ltd.'s culpable acts or omissions directly and proximately caused Plaintiffs' injuries which are more fully described in the "Damages" section of this Complaint.

114.    Defendant Juhu Beach Resorts Ltd. is directly liable for its culpable acts and omissions.

115.    At all material times, Defendant Juhu Beach Resorts, Ltd. was acting as Defendant Marriott International Inc.'s actual agent and/or apparent agent and Defendant Marriott International, Inc. is vicariously liable for Defendant Juhu Beach Resorts, Ltd.'s culpable acts and omissions.

116.    In the alternative, Defendants were partners in that they carried on as co-owners of a business for profit, and they are therefore jointly and severally liable for each other's culpable conduct.

117.    In the alternative, Defendants were operating in the course and scope of a joint enterprise or joint venture and are therefore jointly and severally liable for each other's culpable conduct.

### THIRD CAUSE OF ACTION: NEGLIGENCE
*Directly against Defendant Marriott International, Inc.*
*Vicariously against Defendant Juhu Beach Resorts, Ltd.*

118.    At all material times, Defendant Marriott International, Inc. had a special relationship with patrons or guests who frequented premises bearing the Marriott brands or names, including those owned or operated pursuant to franchising or licensing arrangements.

119.    At all material times, Defendant Marriott International, Inc. had duty to exercise reasonable care for the safety of guests or patrons who stay at premises bearing the Marriott brands or names, including those owned or operated pursuant to franchising or licensing arrangements, such as the JW Marriott Mumbai Juhu.

120.    Defendant Marriott International, Inc. breached its duty of care through the following acts and omissions described:

    a.   Negligently failing to adequately inspect the exterior lobby/driveway area;

    b.   Negligently failing to maintain the exterior lobby/driveway area;

    c.   Negligently failing to discover the danger posed by the drop-off;

    d.   Negligently to remedy the danger posed by the drop-off;

e.   Negligently failing to warn patrons and guests of the danger posed by the drop-off;

f.   Negligently failing to protect patrons and guests of the danger posed by the drop-off;

g.   Negligently failing to ensure compliance with the Marriott Standard Operating Procedures;

h.   Negligently failing to ensure compliance with the Marriott Quality Assurance Program;

i.   Negligently failing to ensure compliance with the Marriott Hotel Design Guide;

j.   Negligently failing to ensure compliance with the Marriott Standardized Inspection Checklists;

k.   Negligently failing to ensure compliance with the Centralized Training Program;

l.   Negligently failing to exercise control over the area in question pursuant to the franchise or licensing arrangement;

m.   Negligently failing to adhere to the design, safety, and hotel industry standards; and/or

n.   Otherwise negligently failing to act reasonably under the circumstances.

121.   Defendant Marriott International Inc.'s culpable acts or omissions directly and proximately caused Plaintiffs' injuries which are more fully described in the "Damages" section of this Complaint.

122.   Defendant Marriott International Inc. is directly liable for its culpable acts and omissions.

123.   Upon information and belief, Defendant Marriott International Inc. was acting as Defendant Juhu Beach Resorts, Ltd.'s actual agent and/or apparent agent and Defendant Juhu Beach Resort, Ltd. is vicariously liable for Defendant Marriott International, Inc.'s culpable acts and omissions.

124.    In the alternative, Defendants were partners in that they carried on as co-owners of a business for profit, and they are therefore jointly and severally liable for each other's culpable conduct.

125.    In the alternative, Defendants were operating in the course and scope of a joint enterprise or joint venture and are therefore jointly and severally liable for each other's culpable conduct.

**FOURTH CAUSE OF ACTION: PREMISES LIABILITY**
*Brought in the alternative to Plaintiff's Third Cause of Action*
*Directly against Defendant Marriott International, Inc.*
*Vicariously against Defendant Juhu Beach Resorts, Ltd.*

126.    In the alternative, Defendant Marriott International Inc. was a premises owner who opened its premises, the JW Marriott Mumbai Juhu hotel, to the public for business.

127.    At all relevant times, Defendant Marriott International Inc. was required to use reasonable care in the supervision, maintenance, or control of the JW Marriott Mumbai Juhu hotel.

128.    At all material times, Plaintiff John Sant was an "invitee" while on the JW Marriott Mumbai Juhu's premises.

129.    At all relevant times, Defendant Marriott International Inc. knew or, by the exercise of reasonable care would have discovered, the dangers posed by the dangerous condition of the exterior lobby/driveway drop-off.

130.    At all relevant times, Defendant Marriott International Inc. knew or should have known that the exterior lobby/driveway drop-off involved an unreasonable risk of harm to its guests or patrons, including Plaintiff.

131.    At all relevant times, Defendant Marriott International Inc. knew or should have known that guests or patrons, including Plaintiff, would not discover or realize the danger, or would fail to protect themselves against it.

132.     At all relevant times, Defendant Marriott International Inc. failed to exercise reasonable care to protect guests or patrons, including Plaintiff, from the dangerous condition, in the following ways:

    a.   Negligently failing to inspect the exterior lobby/driveway area;

    b.   Negligently failing to maintain the exterior lobby/driveway area;

    c.   Negligently failing to discover the danger posed by the drop-off;

    d.   Negligently to remedy the danger posed by the drop-off;

    e.   Negligently failing to warn or protected patrons and guests of the danger posed by the drop-off;

    f.   Negligently failing to adhere to the design, safety, and hotel industry standards and requirements that are standard in the hotel industry; and/or

    g.   Otherwise negligently failing to act reasonably under the circumstances.

133.     Defendant Marriott International Inc.'s culpable acts or omissions directly and proximately caused Plaintiffs' injuries which are more fully described in the "Damages" section of this Complaint.

134.     Defendant Marriott International Inc.is directly liable for its culpable acts and omissions.

135.     In the alternative, Defendants were partners in that they carried on as co-owners of a business for profit, and they are therefore jointly and severally liable for each other's culpable conduct.

136.     In the alternative, Defendants were operating in the course and scope of a joint enterprise or joint venture and are therefore jointly and severally liable for each other's culpable conduct.

### FIFTH CAUSE OF ACTION: LOSS OF SPOUSAL CONSORTIUM
### *Derivatively against all Defendants*

137.     As a direct and proximate result of  Defendants' negligent, reckless, willful, and wanton acts and omissions, Plaintiff John Sant can no longer provide affection, protection, support,

services, companionship, care, society, and other pleasures of his marital relationship to Plaintiff Jan Sant.

138.    Plaintiffs' marriage has been adversely affected by Plaintiff John Sant's injuries.

139.    Both Plaintiff John Sant and Plaintiff Jan Sant have suffered injury from the adverse effect on their marriage.

140.    As a direct and proximate cause and result of Defendants' negligent, reckless, willful, and wanton acts and omissions, Plaintiff Jan Sant suffered and will continue to suffer the loss of her husband's care, affection, protection, support, services, companionship, care, society, and the pleasures of the marital relationship for which Defendants are liable and of which are set forth more fully in the "Damages" section of this Complaint.

## V.    DAMAGES

141.    As a direct and proximate result of Defendants' negligent, willful, and wanton acts and omissions, Plaintiff John Sant is entitled to compensation and to recover the following damages:

   a.   Past and future medical and related expenses in an amount to be proven at trial;

   b.   Past and future loss of earnings in an amount to be proven at trial;

   c.   Past and future loss of employment benefits in an amount to be proven at trial;

   d.   Past and future lost earning capacity in an amount to be proven at trial;

   e.   Past and future physical pain and suffering in an amount to be proven at trial;

   f.   Past and future physical impairment in an amount to be proven at trial;

   g.   Past and future disfigurement in an amount to be proven at trial;

   h.   Past and future emotional pain and suffering in an amount to be proven at trial;

   i.   Past and future mental pain and suffering in an amount to be proven at trial;

    j.   Past and future disability in an amount to be proven at trial;

    k.   Past and future loss of enjoyment of life in an amount to be proven at trial;

    l.   Past and future inconvenience in an amount to be proven at trial;

    m.  Other past and future pecuniary loss in an amount to be proven at trial;

    n.  Other past and future nonpecuniary loss in an amount to be proven at trial;

    o.  Punitive damages; and

    p.  All allowable costs, expenses, and fees associated with this litigation.

142.    As a direct and proximate result of Defendants' negligent, willful, and wanton acts and omissions, Plaintiff Jan Sant is entitled to compensation and to recover the following damages:

    a.   The loss of affection, protection, support, services, companionship, care, society, and other pleasures of the marital relationship already experienced and reasonably probable to be experienced in the future in an amount to be proven at trial;

    b.   Punitive damages; and

    c.   All allowable costs, expenses, and fees associated with this litigation.

## VI.    PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request this Court enter judgment against Defendants in an amount supported by the allegations of this Complaint and the evidence at trial as follows:

1.   Judgment against Defendants for general damages in an amount consistent with the allegations of this Complaint and to be proven at trial;

2.   Judgment against Defendants for exemplary damages in an amount consistent with the allegations of this Complaint and to be proven at trial;

3.   Judgment against Defendants for special damages in an amount consistent with the allegations in this Complaint and to be proven at trial; and

4.  Judgment for costs, interests, and such other and further relief as this Court deems just and equitable.

Respectfully submitted this 27th day of April, 2022,

Mel C. Orchard, III (Bar #26068)
Emily S. Madden (Bar #25716)
THE SPENCE LAW FIRM LLC
15 S. Jackson St. / P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290 / (307) 733-5248 (fax)
orchard@spencelawyers.com
madden@spencelawyers.com

*Counsel for Plaintiffs*